Case 13-2077 Central States SE and SW Areas Health et al. v. First Agency Incorporated et al. For argument not to exceed 15 minutes per side, Mr. Frank for the appellant. Good afternoon. I don't know if the court has been brought up to date yet on development as of yesterday afternoon. The Fifth Circuit Court of Appeals issued a published decision in a case that's been pending that tracks all the same issues as this case. We supplied it to the court I think 8 o'clock this morning so the court would have it but I wanted to alert the court to the fact that all the issues relating to ERISA and the equitable remedy claim or claims have been resolved understandably not by the Sixth Circuit but by the Fifth Circuit. It's exactly the same case. The plaintiff is in Central States. The defendant in the case is an excess, athletic, scholastic insurer just like my client. Does the Circuit have this rule which we've had for a while that when you have a conflict the ERISA plan basically gets this benefit? Well the Fifth Circuit doesn't have a comparable rule. The Thorn Apple Valley case in this circuit though predates both the Knudsen case and the Saraboff case as well as other cases from the U.S. Supreme Court. So when Thorn Apple Valley was decided by this court in the early 90s there was not this bar that exists now regarding the collection of money as a quote-unquote restitution or some other type of remedy that's not truly an equitable remedy. On top of that there is... Did the Fifth Circuit allow the legal remedy that we have here? I'm sorry? Did the Fifth Circuit allow the legal or money remedy that we have in this case? No, dismissed the case completely and every court that has resolved this in the last couple years and every one has involved Central States. Every single court, all the district courts, plus now the Fifth Circuit have ruled against Central States on identical facts. In every case Central States had prepaid claims and then sought to get what they called equitable lien slash constructive trust slash restitution from a different insurer who had exactly the same type of policy as we have. And every one of those courts rejected the claims because under the U.S. Supreme Court decisions... But just this is a little difficult I mean I'm not sure it's a great idea. At least I don't know about my colleagues. I don't know about this case. I wasn't here at 8 a.m. I was driving watching soccer games and I thought I was ready for this case this afternoon and lo and behold I wasn't. So if I were you, at least if you're trying to get any headway with me, I would not talk about the Fifth Circuit case except to say in the course of your normal argument this point was reiterated by them. Okay? Because you're gonna be, it's just gonna be very unproductive when it comes to me. I appreciate it. I'm just gonna be looking at you, your lips are moving and I'm gonna have no idea what you're saying. Okay. Okay so back to this case. You know let's just say you're right about the legal equitable point. Still entitled to a declaratory judgment, right? There is an issue, yes, as to prospective relief. And let me address, Your Honor, I was, I don't know if I was clear, this decision came out at 4 in the afternoon yesterday from the Fifth Circuit. So you didn't listen very well. No but I, as far as, as far as a declaratory relief, yes, count one of this complaint is for declaratory relief. And certainly there is an issue and there could be issues on a going forward basis. Are you conceding they're right, the No, I won't concede that. I'm distinguishing. What do you have to say about that? That in terms of declaratory relief, to the extent there is future, a future issue with regard to people who come before central states and and want to submit for claims and they haven't paid them yet and they want to go to court and say, as to the relationship between central states and my client, who should go first? That would be theoretically a proper claim to be brought under ERISA in the Western District of Michigan. So that to the extent any of the 13 plaintiff, not plaintiff, the claimants in this case have either present or future ongoing claims, I believe it would be appropriate for the Western District to coordinate the policies, figure out what they say, and issue a declaratory judgment for future coordination of benefits. That would be the limit, though, of what the district court is empowered to do under ERISA. So let's just say you're right about, you know, this is not cognizable equitable relief, the $112,000, whatever it is, but that still is a fee issue, right? Yes. As far as the fees, Judge Neff... Are you just in abusive discretion land or where are you? Well, Judge Neff, in my mind, ran counter to every precedent, every decision that this court has issued on the fee-shifting element of ERISA, with the understanding that this court has made it very clear that fee-shifting under ERISA is the exception and not the rule, and we have essentially a garden-variety contractual interpretation dispute between two insurance companies. We don't have the typical fee-shifting where a beneficiary has to sue his or her own plan, gets stiffed for some reason, has to file a case in district court, and succeeds, and the fee-shifting is intended, in those cases, to deter the wrongful denial of a claim by a plan. That is the prototypical fee-shifting. On the other hand, we have cases, including cases where this court has upheld the denial of attorney's fees, that are garden-variety contractual insurers. There's no reason to fee-shift when what you've got is essentially a business dispute between two insurance companies who go to the court for guidance and say, how should we interpret our policies? So this court has pretty aggressively... I won't say it's your claim, but I guess I'm not following this point. I mean, I get the equities as between a big insurance company and an individual, how difficult it is for the individual not to get the coverage in the interim. But, I mean, you can have misbehaving insurance companies. I'm not saying that happened here, but surely that can happen. Absolutely, and that's why the first element in the king five factors is bad faith and culpability. Judge Neff found there was no bad faith and no culpability. As we've addressed it in the briefs, that is a gatekeeper function of the district court. We believe that the cases, if you look through them, will show that only when there is some bad faith or culpability does a district court then look at the other factors to see if any of them militate against the award of fees. But it be that the district court, or perhaps even this court, would be concerned that guarantee trusts not repeat this same behavior, maybe of stiffing central states like the individual gets stiffed because, you know, the only way it appears that maybe central state prevails, perhaps, is to go to state court to seek its remedy, since it can't get a legal remedy under ERISA. But if they have problems in state court, then, you know, guarantee trusts can continue to do what it's done, stiff central states. So isn't that conceivable? Let me address that head-on. First of all, with the background that Judge Neff found, no bad faith, no bad culpability. It was strictly a business dispute. And if you read her decision, she even said there's very little evidence in the record of any problem. It's just two companies trying to interpret a contract. The deterrent element of the king factors is intended to prevent a future insurer, basically a plan or an insurance company, from doing something that the district court wants to send out a signal, don't do this, we're deterring you. Let's talk about whether that should even apply. Shouldn't a company in the position of guarantee trust properly be entitled to show up in court and say there's a conflicting coordination of benefits? We've got this 1994 Sixth Circuit case that not even Thornaple Valley is directly on point. That deals with a no-fault carrier arguing with an ERISA plan. So there's not even any guidance directly in the Thornaple Valley decision. So would we want to enforce its rights? I don't think the courts are designed to deter that. I don't think, if anything, it brings the question to a panel like this for some type of a decision. ERISA deterrence works when you have plans that say, hey, you hurt your back, sorry, it's not the right disk, and so we're not going to award you benefits, and they keep doing it and keep doing it. But the best case, because it's still an abusive discretion standard, there are five factors, as you acknowledged. In some respects, the district court deserves credit for, you know, acknowledging there's no bad faith, but still decides to exercise her discretion this way. What's the best case? I mean, because you obviously agree or understand that abusive discretion is a tougher standard than de novo, say, so what's the best case that shows she was looking this way and the law required her to look this way? There's not a single case that this court has ever issued or affirmed where, with a finding of no bad faith and no culpability, a lower court has properly awarded ERISA attorney's fees. Do you have cases where we reverse on that ground? There aren't any, because until Judge Neff did it, I couldn't find a judge. The trial judges aren't doing it in the first instance, is your point? I couldn't find a trial judge who would ever made a finding of no bad faith, no culpability, but yes, attorney's fees. So that's an abuse of discretion, to misinterpret. This is the Marbury versus Madison of attorney fee ERISA cases? Apparently it is, and we searched, we searched, but the rules are set up so that you're intending this court's guidance is not fee shift. That's the rule is to not fee shift, and only when you find some type of action that would allow or demand that you switched over to fee shifting should you fee shift, and Judge Neff. But it doesn't have to be bad faith. It doesn't have to be a finding of bad faith, does it? It doesn't have to be, but we haven't found, and we found certainly this court affirming the denial of attorney's fees, where a lower court says there's no bad faith, and this court says that's right, there's no bad faith. So we are prohibited from affirming, not withstanding the fact that Judge Neff found no bad faith. Certainly, you're never prohibited, but the issue is, did she abuse. I mean on the fee shifting issue? Yes, on the fee shifting, under the abusive discretion standard, there is still some leeway for this court to reverse a district court. There has to be, there has to be. Or to affirm the district court. I'm a district court judge. I know, I know, and I, you know, honestly I've looked up your record and I couldn't find any award of attorney's fees in an ERISA case where there was no finding of bad faith or culpability. So I don't think there. So your point is that what, what takes this out of the heartland of civil cases where fees are typically not awarded? And they, so you suggest that here there doesn't appear to be any deterrent kind of feature that would prompt treating this case as outside the norm. Absolutely. For civil, civil damages. Absolutely. And this is a decision did not identify a single plausible deterrent effect that her decision could have. I don't recall that she even acknowledged that she needed to though. She, she said, she, I think she put the word deterrent in there. That was it. Okay. So that, but there's no, there's no substance to the point. So. Why isn't deterrent a big deal here? I mean look what happens in this case if you're right on the legal versus equitable money damages. I mean they don't even get the money. Well. Right? And, and the Fifth Circuit and every district court has addressed that. I don't want to reward that. Head on. Because Mr. Kerry, counsel had argued exactly that point in the Fifth Circuit. Which is, if you don't give us this remedy, where will we go for remedy? And the Fifth Circuit said, essentially we are interpreting ERISA, not our problem. I don't know, I'm, I'm making, I'm combining the two points that it's, maybe Judge Neff realized she was on weak grounds on the $112,000. And she thought, well at a minimum these guys are gonna get fees. And that's, that's why it's deterrent. The deterrent point is not just you're being super aggressive with determining insurance contracts. It's the difficulty if you don't pay up front of collecting. May I have time to answer? Which this case, which this case proves. May I have time to answer? Yeah, absolutely. The, the, because the fee shifting is set up as, as the, as the exception and not the rule. And there's no evidence that Judge Neff went through the process that you've just described. Which. She used the word deterrent. Well, yes. And, but she didn't identify how in a, in a straightforward business fight between two insurance companies, there could be any deterrent effect. What, in other words, what would she be trying to deter, except a company like my client in the future, arguing in favor of its contractual rights. Why should that be deterred? That, that's an element that the legal system should be promoting, not deterring. As opposed to some plan that is in the business of denying people with back pain and the judges have to send out a message. If you're gonna do that, you're gonna get stuck for some attorney's fees as well as paying for the back pain. Okay. I think you, you'll get your full rebuttal time. Thank you. Thank you. Good afternoon, your honors. I'm Francis Carey. I am the Director of the Federal State's Health and Welfare Fund, the appellees in this case. I was not going to start with the attorney's fees issue. But Judge Neff stated something in the record on the attorney's fees issue, which I think is a lead into my main argument. And when Judge Neff looked at the attorney's fees issue, it's true she did not find, quote, bad faith on a part of guaranteed trust. But what she did say, she said, I think that it's true that insurance companies shouldn't routinely and arbitrarily deny coverage. And I think that liability for attorney's fees goes a long way to discouraging that kind of internal corporate policy, which may have been at issue here. And then she goes on and she says the attorney's fees confers a common benefit on all plan participants. Do you agree it's the, it's what he just said, it's very unusual to find these cases. Is he wrong about that? I, Judge, the test, I think since the Supreme Court in the Hart decision said, is there some degree of success on the merit? Central states achieved some degree of success on the merit. Then there was an analysis of the key factors and the judge found that the factors of deterrence and of stopping a corporate policy were relevant to award fees for central states. What is she trying to deter though? That's, I think, Judge Marbley, that's the whole point of this case. What she's trying to deter is the situation like this, which would be a standard coordination of benefits issues if it was two insurance companies, they go into court, determine the order of benefits. In this case, in all the 13 instances where central states paid the bills of these covered individuals, there was a refusal on the part of the defendants in the case to look at the bills, to pay the bills. They just sent letters and the letters are in the record. They're attached to the complaint. They just sent letters out saying, no, we're not going to pay anything, which leads me to the main point of this case. I mean, both sides had a contractual reason for not paying. Don't you think that's fair? I mean, that just seems like a fair statement. I think, Your Honor, in light of Thornaple Valley and in light of the jurisprudence in this circuit, that when you have a non-profit ERISA plan like central states, that the idea behind Thornaple Valley, looking at federal common law in saying, we're going to protect the welfare benefit plans. We're going to look at the plans and see what plans provide. But Thornaple Valley, the importance of Thornaple Valley was that we needed to look to to have, there are no gaps to be filled, so it's unnecessary. So Thornaple Valley is of limited use in this case, isn't it? Well, I would suggest, Your Honor, that there is a gap if it's the position of the insurance companies that central states goes ahead and pays bills of its participants and beneficiaries so that they're going to be left with, and the interesting thing, there's no participants or beneficiaries in this case. There's no participants suing central states and suing guaranteed trust. The reason they're not doing it is because central states paid their bills. Central states protected them from having the credit people chasing after them. So indeed, there is a gap. If you take the argument... Before we knight central states, central states paid those bills because it was felt that it was obligated to do. If you, to do so, if you believed as counsel for central state that under the policy you were, did not, were not obligated to pay those bills, you wouldn't have paid them, right? No, we have a job, Your Honor. Wait, wait, you don't, you mean that you will pay bills that you were not obligated to pay? We're obligated to pay those bills because those people are participants and beneficiaries. Their fathers and mothers work for Teamster companies under collective bargaining agreements that give them coverage and they expect that when their children have accidental injuries that they're going to get paid. That's, that's my point. You paid those bills because you felt legally obligated to do so. What about the instance where you feel that central states is not legally obligated to pay those bills? Do you pay them anyway? Well, I'd give up the point. Well, if we're not legally obligated to pay the bills, Judge, how can I say that? You don't pay them. You don't pay them, which is the same position that Guaranteed Trust takes, isn't it? I don't think it is, Judge, because you're weighing an ERISA plan against a private insurance company and the case law says that the ERISA plans should govern their provision. Maybe your best way, your is Thornaple established that there really wasn't a conflict because when there's a conflict, there's a default rule and they should have known it. I guess that's your point. What do you say about the 112,000? What's your, you know, sounds like the cases aren't going very well for you on that front. Well, Judge, you don't want to talk about that's fine, but I thought that was your big issue. That's the issue that I wanted to let you get some of it. That's the reason that these other cases, and I'm familiar with these other cases, have ruled that there's no right to equitable relief. Again, leaving central states without a remedy, leaving central states worse off because it's an ERISA plan than if it was a private insurance company and just go in and get this type of determination about who's primary under these policies. The main reason that they've reached that conclusion is because they said that central states didn't pay any money to these insurance companies. I'm sure Mr. Frank would make the point he's made in the briefs that central states didn't pay any money to guarantee trust life. Of course we didn't pay any money to them. All the cases cited by Mr. Franks, all the decisions by these circuit courts, the recent decision of yesterday afternoon by the Fifth Circuit Court of Appeals, all involved subrogation reimbursement type cases. Not a single case involved coordination of benefits. Coordination of benefits is a different situation where the insurance company, where central states doesn't pay money to guarantee trust, it pays the money for its beneficiaries to the medical service providers. Central states suggest, Your Honor, that the district court in this case, Judge Neff, made exactly the right... To call it equitable relief. I think it's easier, Judge. And I think... Because they paid the money out. I think Judge Neff made the right decision because once central states paid the money, it paid an obligation that under the law, it was the obligation of the defendants to pay. That sets up, at that point, a pool of money identified by the amount of money that central states paid. On behalf of the participants, it sets up a constructive trust because central states pay bills, which under its plan, it has a right to get money to recover overpayments from the defendants in this case. I see the constructive trust running. The private insurance companies. Okay. But the constructive trust... You're paying out to the defendants. You say there's a constructive trust on that money, right? Well, to the extent that the insurance companies don't pay the money, their assets are saved. It's kind of like that Rocho case that was argued last week in front of this court, that they're saving their assets. They're in possession of money that they don't have to spend. And the reason they don't have to spend it is they refused in every situation where central states files a notice of lien with them, where central states said, We'd like reimbursements for this money we paid. The interesting thing, Your Honor, and when you think about it, and you ask Mr. Frank when he gets up here again, if central states refused to pay that money, do you think the private insurance companies would pay it? No, they wouldn't pay it. They would say that they're excess carriers, central states are sitting out there, they should pay the money. And there's a case I cited in the briefs... I don't know what they'd say, but there are risks in not paying. I mean, there's some serious risks if it turns out you were wrong, and I think they would think about that. I think you just put the point on exactly what Judge Posner, in the case that I was going to say, cited in that the Winstead versus J.C. Penney case, it's out of the Seventh Circuit. But Judge Posner, when he reversed the district court, the district court didn't find jurisdiction for central states declaratory action, although I think counsel kind of concedes to some extent to declaratory action. He said that when Judge Posner reversed the district court, they didn't have jurisdiction for central states declaratory action. He says, wait a minute. He says, unless there's jurisdiction for an ERISA plan, either under 502A3 or under federal question jurisdiction, that what would happen, and Judge Posner predicted it, that central states would always be, quote, left holding a bag in the case. And that's a quote from that case, because the private insurance companies wouldn't pay. You'd be putting the participants in... What's gonna happen next? I mean, so tomorrow, let's just say hypothetically, you win on the declaratory judgment issue. What happens next? So you have these exact same policies. I take it at that point, you don't pay, right? If we win? You have a Sixth Circuit decision in hand, it's not appealed. It's the law of the Sixth Circuit. It tells you how to deal with the coordination of benefits, and for sake of argument, you win. So it's like a thorn apple, just the way you want it. Now you have a similarly situated athlete, child of a teamster, just comes forward, tell me how it plays out. I assume you're not gonna pay that. You're gonna say, talk to Guaranteed Trust, right? Well, Judge, if we don't pay that, and if Guaranteed Trust doesn't pay, then those people will be left without coverage and more... I'm sorry. I didn't think I was asking a very difficult question. You're telling me you honestly would not say Guaranteed Trust has to pay under Sixth Circuit law? Well, of course they have to pay, and we tell Guaranteed Trust to pay. If Guaranteed Trust says to these people, well, we're not gonna pay your bills, you go to Central States. If we don't pay bills properly, because Central States is a large, as you know, it's a large risk of plan, we get substantial discounts from Blue Cross to pay bills quickly. Wouldn't you have other legal options? Couldn't you sue them in State Court? Well, Judge, the issue on there, would it be preempted if it was in State Court? But I mean, couldn't you implead them in an action, I mean, and just get a preliminary injunction? Well, if your Honor is positing the situation where Central States wins... I'm trying to respond to your Judge Posner point, which is a good point, but I'm just trying to figure out if that's just a backward looking point, or if it's a point that gets resolved if you win the declaratory judgment. I think if you win the declaratory judgment action, your Honor, it establishes. And if Thornapple Valley is still the law... Do you think it is? I think it is. I think it's no question that it is, because if... The other counsel thinks not. Well, I'm sure he thinks not. But essentially, if you wanna say that Thornapple Valley's not the law, then you wanna say that Knutson in 2002 came out and wiped out an ERISA plan's ability to go into federal court and seek a declaration, number one, of responsibility regarding payment of bills. And Thornapple Valley, again, is not... It's just a reimbursement case. Thornapple Valley, the whole point of Thornapple Valley... I'm sorry, I misspoke. The whole point of Knutson, Great West versus Knutson, in the equitable relief issue, is that the plan sued the wrong person. They didn't have any money. But if the six... The money was paid to a special needs trust, as you know, in that case. But if the Sixth Circuit establishes the rule that central states can get a declaratory judgment, if they stay with their rule, and if they establish then that there's liability, then to the extent the analogy or the logic of the case is, then to the extent that central states pays these if they refuse to pay the bills, then we have a right to recover from them because they're holding assets in a constructive trust for money that they should have paid that they didn't pay. Which is a long way of saying, going forward, if you get the relief you want on the declaratory judgment front, this equitable remedy problem goes away. Well, Judge, then I trust that the insurance companies will step up to the plate and pay the bills because you notice, if you don't, you bring a deck action, you get a preliminary injunction to have them pay it right away, under clear authority on paying of fees and God knows what else. You could do that, Judge, but I think that this case shows that there were 13 individual cases. Judge Neff said that there was an internal corporate policy of not paying. Yes, Your Honor, we could do what Your Honor says, but in that situation, you'd be going into court every day unless we let the insurance companies pay, and they're not gonna pay because they're gonna say that they're excess. They will never pay. And then in that case, by waiting to go in and get the deck actions, we're gonna lose the prompt payment discounts we get with Blue Cross Blue Shield for paying, moving the money through quickly and getting these claims paid. The insurance... Make no mistake about it, Your Honor, this case is about the private insurance companies not wanting to pay the dime on these things. They're primarily liable or they're covering these people. They wanna collect on the student insurance policies, never pay a dime, put it on the ERISA plan. If we were a private insurance company, if they were a private insurance company, we wouldn't be here. We'd be in state court doing an action. But we're an ERISA plan, and you can't say that our rights have been terminated by Knutson case when it didn't even involve this type of a situation. I got the red light, Your Honor. Are there any other questions? Thank you very much for your time. Okay, thank you, Your Honor. Frank, I think you have three minutes. Thank you. Let me talk about the declaratory relief aspect of this. One of the elements that the Fifth Circuit recognized in its decision yesterday is that as to the claimants who had those claims identified in that case, those were all past claimants, where there was no claim that those people would come in the future, and therefore, it really wasn't even appropriate to be seeking declaratory relief. So when you asked me originally, hypothetically, yes, Judge Neff, if there were present or future claimants before her, she could issue declaratory relief. But the 13 people that are listed here, unless there's some additional showing, there isn't a future issue. There's no ripeness as to any of those 13 people. That's what the Fifth Circuit found yesterday. So in the future, if the suggestion is Mr. Attorney for Central States should take pending or future claims to a state court somewhere and bring in the claimant, bring in guaranteed... That's gonna be preempted. I don't think you can go to state court to enforce ERISA plans. It's not an issue that is before this court today. We're just trying to figure out practically, if you win on the 112,000, what's gonna happen in the future? And that seems like a pretty fair question. And I assume the answer is, of course, they can bring you to federal court. Of course, they can get a preliminary injunction if they happen to win on this construction of the plans. Fine, that's right. And what I'm saying today is that's not before the court. And I don't know exactly what issues there may or may not be, except I can add this. Judge Neff, if the only question is, Judge Neff, here's a claim we're about to pay. Who should pay? It hasn't happened yet. Would you please declare the rights of the parties? So now we have a ripe, actual controversy. If she's applying Thornapple Valley to that, she's applying old, outdated law that was based on an element that doesn't exist anymore, which is the requirement that a company might have to step up and pay after the fact someone else's payment. So we have to open it up and... Doesn't it seem strange that Thornapple's been overruled, in your view, based on a 12 year old Supreme Court decision? And I see lots of ERISA cases. It seems like you've just come up with this insight that everybody's missed. Well, interestingly, the Knudsen and the Sereboff cases, because they were decided in the early 2000s, track totally separately from what this court has done. And there isn't a Sixth Circuit decision after either Knudsen or Sereboff that involves an application of the Thornapple Valley principle to an ERISA plan and a no fault plan. That's the paradigm. And there's not anything that involves an ERISA plan and a private plan. So this is the first panel to consider whether Thornapple Valley even survives after the Knudsen and the Sereboff decisions. I guess my argument would be that if the question is, how do these plans coordinate, that could be determined in a declaratory relief action without the baggage, let's say, of the older Thornapple Valley decision. But that's not the case that central states filed. It's not the case they filed in any of the courts, and they've lost every single decision on all the same issues. You want us to, in addition to other things, to declare Thornapple Valley no longer valid law? I don't think you need to, because I don't think when push comes to shove, there is any actual controversy as to 13 people, because those 13 people identified in the complaint already had their money paid out. So you don't have properly in a procedural way... One controversy is whether you have to pay that out. Actually, the Fifth Circuit decision yesterday suggests it's not live, because all the 13 people in our case are old people. That's happened already. I want you to address Judge Sutton's question, though, assuming that we are not going to follow... Just assuming for the purpose of my question, that we're not following the Fifth Circuit decision. The issues are on the declaratory relief aspect. I mean, the one point is that, hey, the 112,000, they say it's... You owe it to them. So just forget the Fifth Circuit for a second. You're saying there's no Article Three dispute, case or controversy? If I assume that all they can get is equitable relief under the Knudsen and the Sereboff decisions, and I believe the Fifth Circuit tracks it 100%. So if the argument is they can only get prospective equitable relief, then bringing a claim up for 13 people where they've already received money is a remedy that the court could grant them that's consistent with Knudsen or Sereboff. Knudsen and Sereboff very specifically say, you can't take money out of my client's pocket to reimburse central states for money they already paid to the 13 people. If they had 13 new people who hadn't yet received money, it would be a different case, but we don't have that. And in this case, we have to go with the contours of the case, which is 13 people who had their money already paid out by central states, and central states wants it back from us. So in the context of this case, although to answer your first hypothetical, yes, she could have granted declaratory relief in theory, there aren't actually any people before her that require declaratory relief. Those people already got their money. I didn't see in your brief that you asked Thornapple to be overruled. I'm just looking at your brief. We're not asking that it be overruled. We're simply saying that to the extent that there's a restitutionary or equitable lien or constructive trust type of a claim against us to reimburse central states, that Nudsen and Sereboff and all the cases after say, you can't impose that remedy on us. And that's... Okay. Thanks to both of you for your helpful oral arguments and briefs. We appreciate it. The case will be submitted and the clerk may call the next case.